UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HONGNIAN GUO,
    Plaintiff,

v.                                                                     CIVIL ACTION NO. 23-12583-MPK[1]

JOHN PIERCE SCHOOL,
JAMIE YADOFF,
    Defendants.

MEMORANDUM AND ORDER

KELLEY, U.S.M.J.

I. <u>Background</u>.

Pro se plaintiff Hongnian Guo claims that his constitutional rights were violated by an allegedly unlawful meeting between staff at his children's school and his ex-wife, who accused plaintiff of abusing her, and by the current school principal's failure to release records of the meeting to him. After the meeting, plaintiff implies, the Massachusetts Department of Children and Families ("DCF") became involved and he lost custody of his children. (#1, original complaint; *see* #19-1, proposed amended complaint). Plaintiff is a resident of Rhode Island, *see* #1 at 1, and originally filed this lawsuit in the United States District Court for the District of Rhode Island, #23-cv-438-JJM-LDA. That Court transferred the case to this Court, as plaintiff had not

---

[1] The parties have consented to proceeding before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (#28.)

alleged that Rhode Island was the proper venue or that the District of Rhode Island had personal jurisdiction over defendants. (#5.)

Here, plaintiff requested clerk's entries of default, which were issued. (##12, 13.) Because plaintiff's pleadings concerning the entries of default seemed to contain a new complaint, the court sought clarification as to whether plaintiff was seeking to amend his complaint. (#13.) Plaintiff filed a motion to amend (#19), with a proposed amended complaint (#19-1),[2] and on the same date, a motion for default judgment (#20).

A few hours before plaintiff's motions to amend and for default judgment were docketed, defendants filed an answer to the original complaint (#17), as well as a motion to set aside the clerk's entries of default (#18). Defendants have not filed an opposition to plaintiff's motion to amend. Presumably in response to defendants' answer, plaintiff filed two substantively identical motions opposing dismissal. (##24, 25.)

The court held a hearing on the issue of consent to magistrate judge jurisdiction. (#27.) In addition to the consent form, defendants filed a motion to dismiss the proposed amended complaint (#29), raising three grounds: (1) lack of federal jurisdiction, *see* #30 at 1-3; (2) failure to state plausible claims, *see id*. at 3-5; and (3) *Younger*[3] abstention, *see id*. at 5.

The court allowed defendants' motion to set aside the clerk's entries of default and denied plaintiff's motion for default judgment, noting that plaintiff's motion to amend (#19); his motions

---

[2] The court has restricted access to #19-1 because of plaintiff's failure to redact all instances of the children's names. The court also notes that plaintiff refers to "cropp[ing]" exhibits in order to avoid showing the children's names but that "whole" documents are available "if" and "when" requested. (#19-1 at 9, 12, 13.) It is not the court's burden to request documents; it is plaintiff's burden to satisfy Fed. R. Civ. P. 8(a)(2)'s requirement of "a short and plain statement of the claim showing that [he] is entitled to relief" while complying with Fed. R. Civ. P. 5.2, which sets out privacy protections for public filings.

[3] *Younger v. Harris*, 401 U.S. 37 (1971).

2

opposing dismissal (##24-25); and defendants' motion to dismiss (#29), remained under advisement. (#31.) Plaintiff has not filed an opposition to defendants' motion to dismiss. The court considers that motion to be opposed, given plaintiff's prior motions opposing dismissal.

The court allows plaintiff's motion to amend as unopposed.[4] The court agrees with defendants that plaintiff has failed to state plausible claims, and thus allows their motion to dismiss, without prejudice, and denies plaintiff's motions opposing dismissal.[5]

II. Discussion.

    A. Federal Jurisdiction.

Defendants, represented by counsel for the Town of Brookline, *see* #30 at 2-3, make the same argument recently rejected by District Judge Joun in another of plaintiff's actions in this Court, against the Brookline Police Department (BPD) and officers, namely, that plaintiff has not adequately invoked federal jurisdiction because no private cause of action exists under the various constitutional provisions cited. *Guo v. Brookline Police Department, et al.*, #23-cv-12704-MJJ, #28 at 3-4 (D. Mass. Apr. 29, 2024) ("*Guo v. BPD*"). This court also rejects that argument for the same reason Judge Joun did: plaintiff's allegations that his federal constitutional rights were violated may be brought under 42 U.S.C. § 1983. *Guo v. BPD*, #28 at 3 (citing *Martin v. Somerset Cnty.*, 86 F.4th 938, 943 (1st Cir. 2023)).

---

[4] The court would reach the same result if it were to deny plaintiff's motion to amend as futile and treat defendants' motion to dismiss as a motion for judgment on the pleadings with respect to the original complaint. Fed. R. Civ. P. 15(a)(2) and Fed. R. Civ. P. 12(c) both involve application of the plausibility standard. *See Parker v. Landry*, 935 F.3d 9, 13 (1st Cir. 2019); *see also Sevelitte v. Guardian Life Ins. Co. of Am.*, 55 F.4th 71, 79 (1st Cir. 2022). The original complaint was deficient, too.

[5] The court disagrees with defendants that federal jurisdiction is lacking and does not reach their *Younger* argument, which is premised on plaintiff and his ex-wife's divorce proceeding. (#30 at 5; *see* #30-1.)

3

Further, in yet another of plaintiff's actions in this Court, against his ex-wife, her mother, and their attorney, based on divorce and related state court proceedings, *Guo v. Wang, et al.*, #23-cv-12161-DJC ("*Guo v. Wang*"), District Judge Casper followed the "preferred practice" when both federal jurisdiction and the existence of federal claims depend on whether the complaint states a federal question, which is to assume that jurisdiction exists and to proceed to the determination of whether the claims survive scrutiny under Fed. R. Civ. P. 12(b)(6). *Guo v. Wang*, 2024 WL 2274610, at *2-3 (D. Mass. May 20, 2024) (quoting *Estate of Soler v. Rodriguez*, 63 F.3d 45, 47 n.1 (1st Cir. 1995)).[6,7]

B. <u>Failure to State Plausible Claims</u>.

1. <u>Standard</u>.

To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Douglas v. Hirshon*, 63 F.4th 49, 54-55 (1st Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))); *see Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 33 (1st Cir. 2022) (complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief, with enough factual detail to make the asserted claim plausible on its face") (cleaned up) (quoting *Cardigan Mtn. Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015) (first quoting Fed. R. Civ. P. 8(a)(2) then quoting *Iqbal*, 556 U.S. at 678)). A

---

[6] In their motion to dismiss on this ground, defendants have not addressed the fact that plaintiff also invokes diversity jurisdiction, *see* #19-1 at 4; *see also* #1 at 3, although defendants did challenge diversity jurisdiction in their answer to the original complaint, based on the amount in controversy, *see* #17 at 2. Like Judge Casper, this court does not reach diversity jurisdiction. *Guo v. Wang*, 2024 WL 2274610, at *3 n.2.

[7] Plaintiff's fourth and final action in this Court, seeking removal of a criminal action pending against him in the Brookline District Court, has been remanded by District Judge Kobick. *Comm. of Mass. v. Guo*, #23-cv-13194-JEK, 2024 WL 1494545 (D. Mass. Apr. 5, 2024).

complaint has facial plausibility when the plaintiff pleads sufficient factual content to allow the court to draw the reasonable inference that the defendants are liable for the alleged misconduct. *Douglas*, 63 F.4th at 55 (quoting *Iqbal*, 556 U.S. at 678); *see Twombly*, 550 U.S. at 556. The plausibility standard is not a "probability" standard but demands more than "a sheer possibility" that the defendants are liable. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Where the plaintiff pleads factual content that is "merely consistent" with the defendants' liability, he stops short of the line between possibility and plausibility. *Id*. (quoting *Twombly*, 550 U.S. at 557); *see Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011).

The court accepts the plaintiff's well-pleaded factual allegations as true and draws all reasonable inferences in his favor. *Douglas*, 63 F.4th at 55. However, the court does not accept as true conclusory legal allegations or factual allegations that are "too meager, vague, or conclusory…." *Id*. (cleaned up) (quoting *Legal Sea Foods*, 36 F.4th at 33-34 (further citations omitted)); *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice") (citing *Twombly*, 550 U.S. at 555). Evaluating a complaint for facial plausibility "requires the reviewing court to draw on its judicial experience and common sense,'" but it may not disregard properly pled factual allegations upon a finding that "actual proof of those facts is improbable." *Ocasio-Hernández*, 640 F.3d at 12 (cleaned up) (first quoting *Iqbal*, 556 U.S. at 678 then quoting *Twombly*, 550 U.S. at 556).

Pro se complaints must be liberally construed; however, pro se status does not insulate the plaintiff from complying with procedural and substantive law. *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). The policy behind liberal construction of pro se complaints is that if the complaint presents sufficient facts, then the court may intuit the correct, albeit imperfectly pled, causes of action. *Id*.

2. <u>The amended complaint</u>.[8]

From the amended complaint and its attachments and exhibits, it appears that the school scheduled a meeting with plaintiff's ex-wife, because either one of her two children attending the school was "sad"[9] or both children reported that there had been "some situations" "at home" that they felt were "intense."[10] Plaintiff's ex-wife told the school what was happening at home, inferentially, that plaintiff was abusing her, and the school said that they would have to report to the matter to DCF.[11] The school, apparently, made the "51A" report on January 28, 2020.[12]

---

[8] On the face of the motion to amend, plaintiff refers to an "affidavit_12," *see* #19 at 1, and in the affidavit itself, plaintiff asks "pursuant to Rule 8 (a) 2" that "Affidavit_12" be "file[d]" to support his "conclusion." (#21 at 1.) The amended complaint is accompanied by "Attachment_1," *see* #19-1 at 8, "Attachment_2," *see id.* at 9-11, with exhibits, *see id.* at 12-17, and "Attachment_3," *see id.* at 18. The court has considered the amended complaint and its attachments and exhibits, i.e. #19-1, as well as "Affidavit_12," i.e. #21. But "Affidavit_12" is conclusory and does not add anything to the analysis.
      The court has not considered the materials that plaintiff submitted in support of his request for clerk's entries of default and motion for default judgment. *See* #12-1 through #12-11; #20-1 through #20-5. Plaintiff has not argued or shown that those materials are properly before the court. *See Douglas*, 63 F.4th at 57 (discussing "narrow exceptions" to general rule that the court only considers actual allegations in the complaint and the attachments to the complaint on a Rule 12(b)(6) motion to dismiss for the failure to state a plausible claim); *see also Guo v. BPD*, #28 at 5 n.4 (declining to consider plaintiff's affidavits in similar circumstances).

[9] Ex-wife's statement as recounted by DCF. (#19-1 at 12.)

[10] Ex-wife's testimony to Brookline District Court, *see* #19-1 at 9, during an unidentified hearing, although inferentially it was a hearing related to a "threatening order," that was held after her meeting with school staff, on the same day. (#19-1 at 14.)

[11] Ex-wife's testimony to Brookline District Court. (#19-1 at 14.)

[12] *See* #19-1 at 14 (ex-wife's statement to Brookline District Court); *see also* #19-1 at 13 ("Reporter (Mandated)"). Mass. Gen. Laws. ch. 119, § 51A requires persons in specified professions and positions, including schoolteachers and administrators, *see* Mass. Gen. Laws ch. 119, § 21, to report to DCF whenever they have "reasonable cause to believe that a child is suffering physical or emotional injury resulting from," *inter alia*, "abuse inflicted upon [the child] which causes harm or substantial risk of harm to the child's health or welfare." Mass. Gen. Laws. ch. 119, § 51A(a). DCF must promptly investigate 51A reports. Mass. Gen. Laws ch. 119, § 51B(a).

According to the portion of the 51A narrative in the record, plaintiff's ex-wife informed DCF, among other things, that: plaintiff gets angry, including over minor things; throws things at her; yells and says bad things; and, two weeks earlier, threatened to kill her and her mother. (#19-1 at 12.) She said that if someone moves plaintiff's chair, he will blow up; she resorted to drawing circles around its feet. (#19-1 at 12.) She said that plaintiff uses physical violence in the home, including punching her in the chest and trying to strangle her. *Id*. She "admi[tted]" that when the children were younger, they did not notice what was happening. *Id*.

According to the one page of transcript in the record, plaintiff's ex-wife denied to the Brookline District Court that plaintiff hurt their son. She said that she thought their son witnessed plaintiff hurting her "sometimes" but "most of the time," plaintiff tried to avoid hurting her when their son was in the same room. (#19-1 at 14.)

On September 7, 2023, the principal responded to plaintiff's request for the records of the school meeting by stating, in an email:

> Because you do not have physical custody and have been denied visitation, pursuant to 603 CMR 23.07(5), I cannot respond to any of your requests for information. I will comply with the subpoena, unless there is an order not to, and testify at the hearing. Please provide me the Teams link to attend the hearing.

*Id*. at 15.

DCF held a "Fair Hearing,"[13] apparently on September 26, 2023. *See* #19-1 at 10. Plaintiff draws the court's attention to the principal's answer to his question if she knew about the school meeting:

> Yeah, so thank you for asking. So I reviewed our formal student records and I do not see any record of the meeting happening. I was not the principal at the time, so I would not have been present at that meeting. That principal has left and typically principals take their personal meeting notes with them. Those are not a part of

---

[13] *See* 110 C.M.R. §10.00 (Fair Hearing process).

> student records. It is not our practice to put DCF filings into student records. Those are usually sent over to central office. Unfortunately the person who is in the role at central office of receiving those records is new to that position and she was unable to find a copy of that record. But I don't have a copy of it and it is not in the student's permanent record here.

*Id*. at 16.[14]

On October 2, 2023, the principal wrote to plaintiff, in part: "I need to reiterate that I can not give you any records, pursuant to 603 CMR 23.07(5)."

Plaintiff alleges that defendants were involved in an "illegal investigation" and "careful[ly] planned organized crime" and "murder" that involved "cheating" a child into speaking out about family issues and then reporting his ex-wife's "false statement" to DCF, "creat[ing] an illusion" that the children reported domestic violence and "cheat[ing]" DCF into identifying him as a threat to them. (#19-1 at 8-11.) Plaintiff asserts that he is "innocent" and "lost…custody" due to the allegedly illegal investigation "full of conspiracy, lies, and untruth," which was an "abuse of power" and "abuse of legal process by false statement." *Id*. at 11. He cites the Privileges and Immunities and Full Faith and Credit clauses of Article IV and the Fourteenth Amendment's Due Process and Equal Protection clauses. *Id*. at 8; *see id*. at 4. He also claims "Subornation of perjury," "False statement perjury," and "Custodial Interference." *Id*. at 9-10, 11.

Plaintiff further alleges that the principal "changed" her statements about the school meeting records and lied at the Fair Hearing regarding the ex-principal taking the records away, in violation of the Full Faith and Credit Clause, and amounting to "Obstruction of Injustice." *Id*. at 8, 10-11.

Plaintiff claims that "four felonies have been committed" and seeks, *inter alia*, $2,000,000, citing 18 U.S.C. § 3571, the federal statute governing fines as sentences in federal criminal cases.

---

[14] There is only one page of this transcript in the record.

(#19-1 at 18); *see id*. at 6. Plaintiff also demands the "[r]elease [of the] meeting records." *Id*. at 6; *see also* #1 at 4, 7.

3. <u>Analysis</u>.

a. <u>42 U.S.C. § 1983</u>.

A § 1983 claim has two essential elements: first, the challenged conduct must be attributable to a person acting under color of state law; second, the conduct must have violated rights secured by the United States Constitution or federal law. *Soto v. Flores*, 103 F.3d 1056, 1061 (1st Cir. 1997). The amended complaint fails on the second element. Plaintiff has not pleaded sufficient factual content to allow the court to draw a reasonable inference that defendants are liable for the alleged violation of any federal constitutional or statutory rights.

To begin, the Full Faith and Credit and Privilege and Immunities clauses have no apparent application here,[15] and plaintiff's citation to the Equal Protection Clause is not supported by any pertinent factual allegations.[16]

Interference in parents' interest in the care, custody, and control of their children may implicate the Due Process Clause. *Hatch v. Dept. of Children, Youth and Their Families*, 274 F.3d

---

[15] *See generally Toomer v. Witsell*, 334 U.S. 385, 395 (1948) ("The primary purpose of [the Privileges and Immunities Clause], like the clauses between which it is located—those relating to full faith and credit and to interstate extradition of fugitives from justice—was to help fuse into one Nation a collection of independent, sovereign States. It was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy").

[16] *See Davis v. Coakley*, 802 F.3d 128, 132 (1st Cir. 2015) ("The Equal Protection Clause contemplates that similarly situated persons are to receive substantially similar treatment from their government….To establish an equal protection claim, a plaintiff needs to allege fact showing that (1) the person, compared to others similarly situation, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish exercise of constitutional rights, or malicious or bad faith intent to injure a person") (cleaned up) (citations omitted).

12, 20 (1st Cir. 2001); *see Johnson v. Salmon*, #15-cv-11781-DJC, 2016 WL 3166385, at *4 (D. Mass. June 6, 2016). However, plaintiff's "[c]ustodial [i]nterference" claim is insufficiently pled.

The protection afforded parents' interest in the care, custody, and control of their children must be balanced against other valid interests, in particular the best interest of the children and the interest of society in the maturation of the children as future citizens. *Hatch*, 274 F.3d at 20. "There is no constitutional right to be free from child abuse investigations." *Kauch v. Dept. of Children, Youth and their Families*, 321 F.3d 1, 4 (1st Cir. 2003). The state may freely investigate allegations of child abuse and on clear and convincing evidence, move to terminate the parent-child relationship. *Hatch*, 274 F.3d at 20.

Because the welfare of the children is paramount, objectively reasonable suspicion of abuse justifies protective measures. *Hatch*, 274 F.3d at 21. The First Circuit has held that the Due Process Clause allows a case worker to take temporary custody of a child, without a hearing, when the case worker has a reasonable suspicion of abuse or that a threat of abuse is imminent. *Id*. at 22. Likewise, it has held that the Due Process Clause allows a case worker to make a recommendation to a court that a family be monitored upon a reasonable suspicion of abuse. *Kauch*, 321 F.3d at 4. It has rejected an argument based on a case worker's pursuit of information learned about one child when she had only been assigned to investigate allegations of abuse of another child: "Public policy encourages a case worker, when presented with evidence of apparent child abuse, to act in the interest of an imperilled child – and it is better to err on the side of caution than to do nothing and await incontrovertible proof." *Kauch*, 321 F.3d at 4 (cleaned up) (quoting *Hatch*, 274 F.3d at 22) ("We live in an era in which case workers operate under enormous pressure, confronted with the necessity of making on-the-spot judgments on the basis of limited and often conflicting

information….When presented with evidence of apparent child abuse, a case worker must have a fair amount of leeway to act in the interest of an imperilled child…").

Here, the school[17] is alleged to have held a meeting with plaintiff's ex-wife after which it filed a 51A report, which, as noted above, teachers and administrators must do if they have "reasonable cause to believe" that a child is suffering physical or emotional injury resulting from abuse inflicted upon the child which causes harm or a substantial risk of harm to the child's health or welfare. Mass. Gen. Laws ch. 119, § 51A(a). As best the court can tell, plaintiff is challenging the reasonableness of the school's suspicion because, he alleges, his ex-wife falsified the domestic violence accusations. (#19-1 at 8, 9.) However, missing from the amended complaint are non-conclusory factual allegations from which the court may infer that school staff knew plaintiff's ex-wife was falsifying the accusations. Even accepting plaintiff's claim that the principal "changed" her statements about the meeting records, *see* #19-1 at 8, when she invoked 603 C.M.R. §23.07(5) to deny plaintiff's pre-Fair Hearing request for information, because he was a non-custodial parent who had been denied visitation,[18] *see id*. at 15, then testified at the Fair Hearing that the meeting

---

[17] Plaintiff has given the court no reason to doubt the principal's testimony that she was not the principal at the time of the meeting; even were that not so, this discussion would dispense with any due process claim against her.

[18] Mass. Gen. Laws ch. 71, §34H(a), provides, in part:

> …[A]ny parent who does not have physical custody of a child shall be eligible for the receipt of information unless: (1) the parent's access to the child is currently prohibited by a temporary or permanent protective order, except where the protective order, or any subsequent order which modifies the protective order, specifically allows access to the information described in this section; or (2) the parent is denied visitation or, based on a threat to the safety of the child, is currently denied legal custody of the child or is currently ordered to supervised visitation, and the threat is specifically noted in the order pertaining to custody or supervised visitation.

*Id*. 603 C.M.R. §23.07(5)(a) provides that that a non-custodial parent is eligible for receipt of information unless:

records were not in the student records and that a central office worker was unable to locate copies of the school's DCF filings, *see id*. at 16; and then invoked 603 C.M.R. §23.07(5) again to deny plaintiff's post-Fair Hearing request for information, *see id*. at 17, conduct in 2023 does not plausibly suggest that school staff knew of false accusations of domestic violence or other alleged wrongdoing by plaintiff's ex-wife in 2020, when the 51A report was made.[19]

---

> 1. the parent has been denied legal custody or has been ordered to supervised visitation, based on a threat to the safety of the student and the threat is specifically noted in the order pertaining to custody or supervised visitation, or
>
> 2. the parent has been denied visitation, or
>
> 3. the parent's access to the student has been restricted by a temporary or permanent protective order, unless the protective order (or any subsequent order modifying the protective order) specifically allows access to the information contained in the student record, or
>
> 4. there is an order of a probate and family court judge which prohibits the distribution of student records to the parent.

*Id*.

[19] Absent non-conclusory factual allegations from which the court may infer that school staff had contemporaneous knowledge of falsity or other wrongdoing, plaintiff has also failed to sufficiently plead any due process claim based upon the knowing submission of false evidence and has failed to sufficiently plead civil aiding and abetting or civil conspiracy claims. *See Doe Next Friend of A v. Spears*, 630 F. Supp. 3d 290, 295 (D. Mass. 2022) (due process may be implicated by "knowing" submission of false evidence) (citing *Hardwick v. Cty. of Orange*, 844 1112, 1118-1120 (9th Cir. 2017)); *Go-Best Assets Ltd. v. Citizens Bank of Mass.*, 972 N.E.2d 426, 438 (Mass. 2012) ("To prove that [the defendant] aided and abetted a tort, the plaintiff must show: (1) that [the other person] committed the relevant tort; (2) that [the defendant] knew [the other person] was committing the tort; and (3) that [the defendant] actively participated in or substantially assisted in [the other person's] commission of the tort"); *Grant v. John Hancock Mut. Life Ins. Co.*, 183 F. Supp. 2d 344, 364 (D. Mass. 2002) ("Because a conspiracy requires an agreement to commit a wrongful act, none can exist where an alleged participant lacks knowledge that a wrongful act is being perpetrated"); *see also Twombly*, 550 U.S. at 556 ("[a]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice").

Similarly, plaintiff's claim that the principal was "lying" at the Fair Hearing when she "involv[ed] the ex-principal without any evidence," *see* #19-1 at 8, is wholly speculative.

To the extent that he is claiming procedural due process violations, plaintiff has not alleged that the school's or the principal's actions deprived him of the ability to seek redress at the state level, either as to custodial issues or the meeting records. Indeed, plaintiff appears to have availed himself of the Fair Hearing process. (#19-1 at 10, 16.) *See generally Pease v. Burns*, 719 F. Supp. 2d 143, 152 (D. Mass. 2010) ("Where a state's interest in quick action is particularly strong, a pre-deprivation hearing is not constitutionally necessary so long as adequate post-deprivation process is available") (emphasis omitted) (collecting cases); *see, e.g.*, *Pineda v. Dept. of Children and Families*, #16-cv-12229-WGY, 2016 WL 7330575, at *3 (D. Mass. Dec. 14, 2016) (plaintiff did not allege the DCF defendants' actions deprived her of seeking redress at the state level); *Hootstein v. Collins*, 928 F. Supp. 2d 326, 340-341 (D. Mass. 2013) (no evidence at summary judgment that the grandparents were prevented from availing themselves of the protections afforded by the care and protection proceeding process); *see also* 603 C.M.R. §23.09(1)-(4) (allowing appeal to the superintendent and then the school committee of an adverse decision by a principal under 603 C.M.R. §23.00, student record access regulations); 603 C.M.R. §23.09(5) ("Nothing in [§23.00] shall abridge or limit any right of an eligible student or parent to seek enforcement of [§23.00] or the statutes regarding student records, in any court or administrative agency of competent jurisdiction"); Mass. Gen. Laws ch. 66, § 10A(a) (process for pursuing a request under state public records law); Mass. Gen. Laws ch. 66, § 10A(c) (allowing civil actions, in Suffolk Superior Court, to enforce the state public records law).

b. <u>Other</u>.

The court agrees with defendants, *see* #30 at 3, that if he is seeking damages or other relief for the alleged violations of federal or state criminal statutes, plaintiff has not shown that such statutes support civil causes of action. *See, e.g., Fuller v. Unknown Officials from the Justice Dept. Crime Div.*, 387 Fed. Appx. 3, 4 (D.C. Cir. 2010) (per curiam) (unpublished) ("there is no private cause of action for perjury, 18 U.S.C. § 1621; subornation of perjury, 18 U.S.C. § 1622; false declarations before a jury or court, 18 U.S.C. § 1623; or false statements, 18 U.S.C. § 1001").[20]

Defendants interpreted plaintiff's original complaint to "essentially" raise a dispute under the state public records law. (#17 at 1.) Neither the original complaint nor the amended complaint cites Mass. Gen. Laws ch. 66, *see* ##1, 19-1, and defendants do not address the law in moving to dismiss, *see* #30. Yet their general argument regarding the lack of sufficient factual content, *see id*. at 5, applies with equal force to any such claim.[21] The principal informed plaintiff that she could not release information to him under 603 C.M.R. §23.07(5) as a non-custodial parent who had been denied visitation. (#19-1 at 15); *see id*. 17. The amended complaint alleges that the

---

[20] Under Massachusetts law, perjury and subornation of perjury are not civil causes of action. *Joubert v. Kindred Country Estates*, #19-cv-30059-MGM, 2019 WL 13251061, *3 (D. Mass. Oct. 15, 2019) (citing *Balisteri v. Nestor*, 123 N.E.3d 802, at *2 (Mass. App. Ct. 2019) (unpublished) (citing *Phelps v. Stearns*, 4 Gray 105, 105-106 (Mass. 1855))); *see Mackie v. Rouse-Weir*, 215 N.E.3d 440, at *3 (Mass. App. Ct. 2023) (unpublished) ("there is no civil cause of action at all for perjury, which is a crime and not a tort"); *see also Lin v. Cheung*, #992957, 1999 WL 818056, at *2 (Mass. Super. Ct. Sept. 27, 1999) ("subornation of perjury" "is a crime and does not in this sense give rise to a private cause of action").

[21] Any Family Educational Rights and Privacy Act ("FERPA") claim would also fail. *See Howard v. Andover Pub. Sch.*, #1:23-cv-12177-LTS, 2024 WL 1236244, at *2 (D. Mass. Mar. 5, 2024) (applying *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002), in holding that father could not bring 42 U.S.C. § 1983 claim based on alleged violation of his right to access daughter's student records); *Doe v. Western New England Univ.*, 228 F. Supp. 3d 154, 176 n.20 (D. Mass. 2017) ("FERPA does not provide either a private cause of action or rights that are enforceable under" § 1983) (citing *Gonzaga*).

14

principal changed her statements regarding the meeting records but does not allege that plaintiff did, or does, have custody, or that plaintiff had not in fact been denied visitation, or that the principal's statements were legally incorrect. Rather, the amended complaint claims the "[l]oss of time with [plaintiff's] kids for four years" as injury and states that he "lost…custody." (#19-1 at 6, 11.) For purposes of the state public records law, Mass. Gen. Laws ch. 4, § 7, exempts from the definition of "public records" "such materials and data…that are…specifically or by necessary implication exempted from disclosure by statute…." *Id*.

The complaint does not present sufficient facts from which the court may intuit other correct, but imperfectly pled, federal or state causes of action. *See Ahmed*, 118 F.3d at 890; *compare Guo v. Wang*, 2024 WL 2274610, at *4 ("'the Court is not required to conjure causes of action which are insufficiently pled'") (quoting *Nasuti v. U.S. Secy. of State John Forbes Kerry*, 137 F. Supp. 3d 132, 141 (D. Mass. 2016)). But the court considers plaintiff's pro se status and orders that dismissal be without prejudice, *see Guo v. BPD*, #28 at 6, notwithstanding that it has determined that the already-amended complaint does not survive scrutiny under Fed. R. Civ. P. 12(b)(6). Defendants have not developed an argument for dismissal with prejudice. *See* #29 at 1; *see also* #30 at 1, 5, 6.

III. Conclusion.

For the reasons set out above, #19, plaintiff's motion to amend is allowed as unopposed; ##24-25, plaintiff's motions in opposition to dismissal are denied; and #29, defendants' motion to dismiss is allowed, without prejudice. Order of dismissal to follow.

June 7, 2024

/s/ M. Page Kelley
M. Page Kelley
United States Magistrate Judge